**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| AZ JV XII LLC, | No. CV-19-00716-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Rob Rutledge, et al., | |
| Defendants. | |

Before the Court are AZ JV XII LLC's ("AZ JV") and Rob Rutledge's cross motions for summary judgment, which are fully briefed. (Docs. 24, 25, 30, 32, 33, 34.) For the following reasons, the Court grants Mr. Rutledge's motion and denies AZ JV's motion.[1]

**I. Background**

This case arises from a dispute over the ownership of real property at 11853 N. 45th Drive, Glendale, Arizona ("the Property"). (Docs. 24 at 3, 25 at 2.) William and Cheryl Carr ("the Carrs") owned the Property prior to March 24, 2006. The Carrs agreed to transfer legal title to the Property to Town and Country Title Services as trustee under a deed of trust dated March 24, 2006 and recorded April 4, 2006, for the benefit of their mortgage company, Ameriquest. (Doc. 24-1 at 4-18.) Eventually, the Carrs fell behind on their obligations to Ameriquest. On April 20, 2009, Fidelity National Title Insurance

---

[1] AZ JV's request for oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

Company ("Fidelity") was substituted as trustee. (*Id.* at 35.) That same day, Fidelity recorded a notice of trustee's sale of the Property. (*Id.* at 23-24.) On October 8, 2009, Mr. Rutledge purchased the Property at the trustee's sale for $65,700. (*Id.* at 26-27.) On October 9, 2009, the Carrs left the Property and Mr. Rutledge took possession and began renting it. (Doc. 24 at 4.) Fidelity, however, failed to record the trustee deed of sale until March 13, 2018. (*Id.*)

AZ JV, a Delaware limited liability company, is in the business of purchasing distressed properties that are in foreclosure or delinquent on payments or taxes. (Doc. 25 at 1.) In February of 2018, AZ JV's principal, Jeff Flores, became interested in the Property as a potential investment after locating a pending tax lien foreclosure action with the Carrs listed as defendants. (*Id.* at 2.) Mr. Flores parsed through the Maricopa County database and discovered that the property tax payments on the Property were delinquent for the years 2013 through 2017. (Doc. 25 at 2.) He additionally reviewed records of the Maricopa County Recorder, which indicated that the Property was subject to a deed of trust, and that a trustee's sale had been scheduled for October 8, 2009. However, Mr. Flores' review did not turn up a recorded trustee's deed of sale.

Mr. Flores then contacted the Carrs. (*Id.*) Mr. Carr informed Mr. Flores that he believed he had lost the Property in a foreclosure and that the Carrs no longer resided at the Property. (*Id.*) Mr. Carr also notified Mr. Flores that the City of Phoenix periodically sent letters to the Carrs, alerting them that the Property was not being maintained. (*Id.* at 3.) In response to these letters, the Carrs would clean the Property. (*Id.*) Mr. Flores eventually inspected the Property.[2] (*Id.*) Then, on March 8, 2018, the Carrs entered into an agreement with AZ JV, in which AZ JV arranged to purchase any interest[3] the Carrs had in the Property for $5,000. (*Id.* at 13-15.) AZ JV delivered $5,000 to the Carrs on

---

[2] Mr. Flores notes that he became aware of the trustee sale and that Mr. Rutledge owned the Property after communicating with the Property's tenant. (Doc. 25 at 11.) Mr. Flores does not specify the date on which he made this discovery, but there is nothing in the record to suggest that Mr. Flores lacked the opportunity to communicate with the tenant during the inspection of the Property. However, the date of this discovery is not material.

[3] The Real Estate Purchase and Sale Contract specifically provided that AZ JV was acquiring the Property "subject to all liens and encumbrances." (*Id.* at 13-15.)

March 10, 2019, and the Carrs executed a warranty deed to AZ JV, which was recorded on March 12, 2018. (*Id.* at 4, 17, 19-20.)

**II. Legal Standard**

When parties submit cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F. 3d 1132, 1136 (9th Cir. 2001). Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not differ on the resolution of the factual question. *Chesney v. United States*, 632 F. Supp. 867, 869 (D. Ariz. 1985).

**III. Analysis**

Under Arizona law, "[a]ll . . . sales and other conveyances of whatever of lands . . . and deeds of trust and mortgages of whatever kind shall be void as to . . . subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law. [Likewise, u]nrecorded instruments . . . as to all subsequent purchasers with notice thereof . . . shall be valid and binding." A.R.S. § 33-42. It is undisputed that Fidelity's trustee deed of sale reflecting Mr. Rutledge's purchase of the Property was unrecorded when AZ JV purchased the Carrs' interest therein. Therefore, to determine ownership of the Property, the finder of fact must decide whether AZ JV had actual or constructive notice that the Property was subject to such an adverse interest. *See Neal v. Hunt*, 541 P.2d 559, 563 (Ariz. 1975) ("Constructive and actual notice have the same effect."); *Chesney*, 632 F. Supp. At 869 (citation omitted) ("The Court may look to state law to determine what constitutes constructive notice."). In Arizona, "[w]here one has notice of a fact affecting property which he seeks to purchase, which puts him upon inquiry, he is chargeable with the knowledge which the inquiry, if made, would have revealed; and one is put upon inquiry by notice of a claim which is inconsistent with the title he seeks to obtain, and must exercise due diligence to ascertain the facts upon which the claim is based." *Neal*, 541 P. 2d at 563 (quoting *Luke v. Smith*, 108 P. 494, 496 (Ariz. 1910)).

Here, at the onset of their conversations, Mr. Carr informed Mr. Flores that he believed that he and Mrs. Carr had lost the Property in foreclosure and no longer lived there. (Doc. 25 at 2.) This information alone put AZ JV upon inquiry notice of potentially adverse claims, which AZ JV was required to exercise due diligence in investigating. *See Neal*, 541 P.2d at 311 (finding rumor that defendant had a water right claim was sufficient to put the plaintiff on inquiry to ascertain if any adverse rights to the property existed). In addition, more facts put Mr. Flores on notice of the adverse claim. Mr. Flores knew that the Property was subject to a deed of trust, that a trustee's sale had been scheduled for October 8, 2009, and that a tenant, not renting from the Carrs, rented the Property.

Although Mr. Flores took some investigatory steps, no reasonable finder of fact could conclude that he conducted a sufficiently prudent inquiry. His only inquiry involved researching the records of the Maricopa County Recorder, which put him on notice. His research revealed that the Property was subject to a deed of trust, and that a trustee's sale had been scheduled for October 8, 2009, but no recorded trustee's deed appeared on the record. (*Id.*) Although several "red flags" indicated the trustee sale had occurred but was not recorded, Mr. Flores stopped his inquiry. He did not perform even the simplest and most obvious of inquiries under the circumstances. He did not contact Fidelity, ask the Carrs whether a foreclosure sale did, in fact, take place and apparently, did not ask the tenant about the landlord's identity.[4] Fidelity, the Carrs and the tenant were all easily and readily available. An inquiry posed to any one of the them would have revealed the Rutledge ownership interest. Instead, AZ JV quickly entered into an agreement, purchasing the Carrs' interest for $5,000.[5] *See Voss v. U.S.*, No. CV-06-2434-PHX-JAT, 2007 WL 2274772, at *2 (D. Ariz. 2007) (quoting *Chesney*, 632 F. Supp. at 870 ("[Plaintiff] could not bury his head in the sand . . . waiting for an adverse party to make a dramatic assertion of a claim. It was incumbent upon [Plaintiff] to make some sort of inquiry or take some sort of action to establish his right to the disputed land.")).

Courts in this district have found less obvious intrusions on land to create notice of an adverse interest at summary judgment. *See, e.g.*, *Voss*, 2007 WL 2274772, at *3 (federal angle irons on a parcel of land put the individual on notice of the government's right of way). No reasonable jury could find that Mr. Torres lacked notice or that Mr. Torres' inquiry was adequate. Consequently, AZ JV was not a subsequent purchaser for value without notice.

**IT IS ORDERED** that Mr. Rutledge's motion for summary judgment (Doc. 24) is **GRANTED** and AZ JV's motion for summary judgment (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter

---

[4] AZ JV, itself, admits that it became aware of Mr. Rutledge's ownership of the Property after speaking to the tenant. (Doc. 25 at 11.)

[5] The small sum for which AZ JV purchased the Property, itself, underscores that AZ JV knew that purchasing the Carrs' interest in the property was a risky venture.

judgement in favor of Mr. Rutledge.

**IT IS FURTHER ORDERED** that AZ JV and the United States Department of Treasury file a joint status report no later than November 22, 2019, outlining the status of any remaining claims, if any.

Dated this 14th day of November, 2019.

Douglas L. Rayes
United States District Judge